IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CATHERINE ENO,                  :    CIVIL ACTION
                                :    NO. 10-7514
          Plaintiff,            :
                                :
     v.                         :
                                :
LUMBERMENS MERCHANDISING CORP., :
                                :
          Defendant.            :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        APRIL 17, 2012


I.    **INTRODUCTION**

Plaintiff Catherine Eno ("Plaintiff") brings this age discrimination action against her former employer, Lumbermens Merchandising Corporation ("Defendant"). Plaintiff alleges that she was laid off under pretextual reasons due to her age. To that end, Plaintiff pleads two counts: (1) Count One — violation of the Age Discrimination in Employment Act ("ADEA"); and (2) Count Two — violation of the Pennsylvania Human Relations Act ("PHRA"). Currently before the Court is Defendant's Motion for Summary Judgment on all of Plaintiff's claims.

For the reasons set forth below, the Court will deny Defendant's Motion.

## II.   BACKGROUND[1]

Defendant is the largest forest products and building material buying group in the United States.  Def.'s Statement of Undisputed Material Facts ¶ 1, ECF No. 15-1 [hereinafter Def.'s SF].  Defendant's headquarters are in Wayne, Pennsylvania.  Id. ¶ 2.  Plaintiff began her employment with Defendant on April 19, 1997.  Id. ¶ 3.  Plaintiff, age sixty-one at the time of her termination, worked as an Assistant Buyer for Defendant.  Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. 2, ECF No. 18 [hereinafter Pl.'s Opening Br.]; Pl.'s Counterstatement of Disputed and Undisputed Material Facts ¶ 1, ECF No. 18-1 [hereinafter Pl.'s SF].  In that role, she assisted lumber buyers in various administrative tasks, taking lumber orders, pricing administration, and communicating with customers and suppliers.  See Eno Dep. 34:9-21, June 27, 2011, Pl.'s Opening Br. Ex. A.  Plaintiff originally began her employment within the Western Commodities Department, joining Assistant Buyers Mark Thornton and Buyer's Assistant Debbie Wilkinson.  Def.'s SF ¶ 10.  Then, in 2005, Defendant transferred Plaintiff to the Eastern Spruce Department.  Id. ¶ 17.  Also in Eastern Spruce was Assistant Buyer Donna Golden, age fifty-six at the time of

---

[1]      In accordance with the applicable standard of review, see infra, at III, the facts set forth in this section are viewed in the light most favorable to Plaintiff.

Plaintiff's termination.  Golden was transferred to Western sometime before 2008.  Eno Dep. 70:18-24.  While at Eastern, Plaintiff's direct manager was Jim Lefever, Department Manager for the Eastern Spruce Department, and his manager, from 2004 onward, was John Raffetto, Purchasing Manager.  Def.'s SF ¶ 11.

During Plaintiff's tenure with Defendant, there is conflicting evidence of her performance.  On the one hand, Plaintiff's written reviews are generally positive.  See, e.g., Raffetto Dep. 156:22-25, June 28, 2010, Pl.'s Opening Br. Ex. B (stating in Plaintiff's 2004 review that Plaintiff is "a pleasure to work with and handles herself in a professional manner"); id. at 167:2-5 (confirming that Plaintiff's 2005 review stated that Plaintiff "hit the ground running in eastern and is doing an excellent job for that department.  The staff in eastern is enjoying her presence").  In contrast, Lefever testified and described Plaintiff's performance as "marginal." Lefever Dep. 26:8-10, July 26, 2011, Def.'s Br. in Supp. of Mot. for Summ. J. Ex. 7 [hereinafter Def.'s Opening Br.].  Moreover, Lefever also testified that Plaintiff "could be explosive."  Id. at 37:20-21.  Raffetto testified that, despite written evidence to the contrary, Plaintiff had an "embittered and embattled mentality."  Raffetto Dep. 167:11-12.

Moreover, the parties also provided different recollections of a disagreement between Raffetto and Plaintiff

3

in January 2008.  At that time, Raffetto called a meeting of approximately ten to twenty members of his department to discuss a computer coding procedure to keep track of unallocated receipts, referred to as the "998 file."  Def.'s SF ¶ 23. Raffetto explained that the 998 file was not being done correctly, and that he had to work on the weekend to complete the task himself.  Id.  Plaintiff testified that she stated, "John, you don't have to spend the whole weekend doing the 998, it only takes 20 minutes."  Eno Dep. 47:9-11.  Lefever testified that both Raffetto and Plaintiff became upset and got into a heated argument.  Lefever Dep. 7:16-23; 10:10-15.  Plaintiff testified that Raffetto apologized to her after the meeting and that Plaintiff then showed Raffetto how to perform the 998 task quicker.  Eno Dep. 155:20-156:9.  Plaintiff's testimony does not indicate that she became upset or otherwise yelled at Raffetto. See id. at 49:24-50:7.

During late 2006 and through 2007 Defendant contends that it experienced a significant decline in business because of the overall downturn in the housing market.  Plaintiff testified that she observed that "housing starts were down" during this timeframe.  Id. at 55:19-20.  Due to this downturn, the senior management of Defendant met in January 2008 to discuss Defendant's finances and expenses.  Def.'s SF ¶ 42.  At this meeting was Anthony DeCarlo, then CEO, David Gonze, then CFO and

4

Senior Vice President of Technology, John Broomell, Senior Vice President of Purchasing, Andrew Toombs, Vice President of Commodity Lumber Division (and Raffetto's manager), and other officers.  Id.  DeCarlo testified that the company had to "take actions to reduce expenses" including a reduction in force ("RIF").  DeCarlo Dep. 52:18-23, July 15, 2011, Def.'s Opening Br. Ex. 6.  Pertinent here, DeCarlo asked Toombs, and the other Vice Presidents, to "assess the workload in his or her division and make appropriate recommendations" for the RIF.  Id. at 56:18-20.  Toombs, in turn, went and discussed the RIF with Raffetto.

There is conflicting testimony between Raffetto and Toombs about whether Toombs provided Raffetto with criteria to assess which employees would be subject to the RIF.  In the end, Raffetto testified that he recommended Plaintiff be terminated in the first RIF because she had less tenure than others in her department and was viewed as a contentious employee.  See Raffetto Dep. 43:6-8, 48:24-50:15.  Specifically, Wilkinson, though forty-one years old in 2008, had eighteen years of service with Defendant compared to Plaintiff's ten years of service.  Raffetto recommended Plaintiff to Toombs for termination during the first RIF, and Toombs recommended Plaintiff to DeCarlo.  DeCarlo approved the recommendation to

terminate Plaintiff because the reasons proffered by Toombs
"seemed plausible."  DeCarlo Dep. 49:22.

On February 8, 2008, Plaintiff was notified of her
termination.  According to Defendant, following this termination
it distributed Plaintiff's duties to Wilkinson, John DiPietro
(age forty-one), William Moran (age fifty-six), Don Wineland
(age fifty-seven), Lefever (age fifty-nine), and Raffetto (age
sixty).  Def.'s Opening Br. 23.  In total, Defendant terminated
eight employees in this RIF, with ages ranging from forty-nine
to eighty-two years old.  Def.'s SF ¶ 67.  Despite this first
RIF, Defendant contends that its business did not improve and it
conducted a second RIF in October 2008.  During this RIF,
Defendant terminated twelve employees, with ages ranging from
twenty-seven to sixty-three years old.  Id. ¶ 76.  This second
RIF occurred after Plaintiff filed her charge with the Equal
Employment Opportunity Commission ("EEOC") on May 22, 2008, see
Pl.'s Opening Br. Ex. A, and after Defendant received that
charge.  See Toombs Dep. 6:25-7:3, Aug. 9, 2011, Def.'s Opening
Br. Ex. 8 (stating that Defendant had notice of EEOC charge in
May 2008).

Following her termination, and after filing her charge
with the EEOC and receiving a right-to-sue letter, Plaintiff
filed suit on December 23, 2010, alleging violations of the
ADEA, 29 U.S.C. § 621 et seq. and the PHRA, 43 Pa. Stat. Ann. §

6

951 et seq.  Defendant answered, denying all averments and
asserting a variety of affirmative defenses.  ECF No. 3.  After
the close of discovery, Defendant filed a Motion for Summary
Judgment on all counts.  ECF No. 15.  Plaintiff responded in
opposition, ECF No. 18, and the matter is now ripe for
disposition.


**III. STANDARD OF REVIEW**

        Summary judgment is appropriate if there "is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  "A motion for summary judgment will not be defeated by
'the mere existence' of some disputed facts, but will be denied
when there is a genuine issue of material fact."  Am. Eagle
Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir.
2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
247-48 (1986)).  A fact is "material" if proof of its existence
or non-existence might affect the outcome of the litigation, and
a dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson, 477 U.S. at 248.

        In undertaking this analysis, the court views the
facts in the light most favorable to the non-moving party.
"After making all reasonable inferences in the nonmoving party's

favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 250.


## IV.  DISCUSSION

Plaintiff brings claims under the ADEA and the PHRA. The Court will analyze these claims together.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (stating that Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts).


### A.  Applicable Law

When assessing claims under the ADEA and PHRA where there is no direct evidence of discrimination, the Court applies the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under that test in an ADEA case,

> [T]he plaintiff bears the burden of proof and the initial burden of production, having to demonstrate a prima facie case of discrimination by showing first, that the plaintiff is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.[2]

Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

Once the plaintiff satisfies these elements, there is a presumption of discrimination.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).  The employer then must "identify a legitimate non-discriminatory reason for the adverse employment action."  Smith, 589 F.3d at 690.  If the employer does so, the presumption of discrimination drops out and the plaintiff must then "demonstrate that the employer's proffered rationale was a pretext for age discrimination."  Id.  At all times, the burden of persuasion rests with the plaintiff.  Id.  And, under an ADEA claim, a plaintiff must prove that age was the but-for or determinative factor for the adverse employment action.[3]  Id. at 691.

---

[2]     In a RIF case, however, the Third Circuit directs that the plaintiff satisfies the fourth prong of the prima facie case if the "employer retained a sufficiently younger employee" who was similarly situated to the plaintiff.  Anderson v. Consol. R. Corp., 297 F.3d 242, 249 (3d Cir. 2002) (internal quotation marks omitted).

[3]     Smith makes clear, however, that despite the Supreme Court's expression of "significant doubt" about the

9

B.    Analysis

Defendant first argues that Plaintiff has not established her prima facie case.  Specifically, Defendant argues that Plaintiff failed to establish the forth prong of her prima facie case — that Defendant retained a sufficiently younger employee similarly situated to Plaintiff.  See Anderson v. Consol. R. Corp., 297 F.3d 242, 249 (3d Cir. 2002); Def.'s Opening Br. 24.  In this regard, Plaintiff points to Wilkinson and DiPietro as retained, younger, and sufficiently similarly employees.  Pl.'s SF ¶¶ 47-65.  There is no dispute that Wilkinson and DiPietro were retained, and that they were sufficiently younger than Plaintiff, both forty-one years old at the time of the RIF.  See Def.'s Opening Br. Ex. B.  Defendant argues, however, that neither one was similarly situated to Plaintiff.

Whether or not Wilkinson or DiPietro was similarly situated to Plaintiff is a "fact-intensive inquiry."  See Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 305 (3d Cir. 2004)

---

applicability of burden-shifting under the ADEA, this burden shifting still applies to ADEA claims in the Third Circuit.  See 589 F.3d at 691 (holding that Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009), did not abolish the McDonnell Douglas burden-shifting framework in ADEA claims).

(discussing similarly situated standard under New Jersey law but
stating that it did not suggest the standard would differ under
the ADEA).  Indeed, the Court looks to "job function, level of
supervisory responsibility and salary, as well as other factors
relevant to the particular workplace."  Id.; see also Lepore v.
Lanvision Sys., Inc., 113 F. App'x 449, 452 (3d Cir. 2004) ("In
a reduction in force case, the persons outside the protected
class are those employees who are 'similarly situated,' that is,
they work in the same area in approximately the same position."
(citation omitted)).  In this case, Defendant argues that
Wilkinson was not similarly situated because Wilkinson "had none
of the issues that Plaintiff was perceived to have, and she had
18 years of experience, seven years more than Plaintiff had."
Def.'s Opening Br. 24.

        Defendant is incorrect.  It is undisputed that
Wilkinson, at the time of Plaintiff's termination, was also an
Assistant Buyer in the lumber department.  She had been in that
position since, at the earliest, 1997, and, at the latest, 1999.[4]
Thus, both Plaintiff and Wilkinson had comparable tenure as

---

[4]        As discussed more thoroughly below, the record
indicates that Wilkinson began employment with Defendant in 1990
as a secretary, became a senior secretary in 1993, became a
Buyer's Assistant in 1997, and then became an Assistant Buyer in
1999.  See Pl.'s Opening Br. Ex. 17.  There is some dispute
about whether there is a difference between a Buyer's Assistant
and an Assistant Buyer.

11

Assistant Buyers, as Defendant hired Plaintiff as an Assistant
Buyer in 1997.  Defendant argues that Wilkinson's tenure was
eighteen years, going back to when she began as a secretary in
1990.  That may be so, but it is irrelevant as to whether
Wilkinson was similarly situated in terms of whether she
"work[ed] in the same area in approximately the same position"
as Plaintiff.[5]  Lepore, 113 F. App'x at 452.  Having concluded
that Wilkinson was similarly situated, the Court finds that
Plaintiff established her prima facie case and need not consider
whether DiPietro was similarly situated.[6]

As Plaintiff established her prima facie case,
Defendant must identify a legitimate nondiscriminatory reason
for terminating Plaintiff.  Defendant contends that it conducted
the RIF due to a 47% drop in sales.  Moreover, the hardest hit

---

[5]    Defendant also argues that Wilkinson had none of
Plaintiff's behavior problems.  As the Court will discuss below,
the record is unclear as to whether Plaintiff did have the
alleged behavior problems.  Moreover, Defendant's arguments
regarding Wilkinson's tenure and behavior are more appropriate
when considering Plaintiff's pretext arguments.  And indeed, the
Court addresses Defendant's arguments below.

[6]    To be sure, there is evidence that other employees
closer in age to Plaintiff took over some of her duties.  See
Def.'s Opening Br. 23.  Nonetheless, the fact remains that
Wilkinson was similarly situated and, therefore, Plaintiff
established her prima facie case.  See Consol. R. Corp., 297
F.3d at 250 ("[T]he plaintiff must show, as part of the fourth
element, that the employer retained someone similarly situated
to him who was sufficiently younger." (emphasis added)).

group for this sales reduction was Plaintiff's department of
Eastern Spruce.  As a result, Defendant provided two reasons why
it terminated Plaintiff during the RIF: (1) she had less tenure
than others in her department; and (2) that, despite some
positive performance reviews, she was perceived as difficult to
work with and "very contentious."  Def.'s Opening Br. 25.

In response, Plaintiff argues that Defendant's
proffered nondiscriminatory reasons are pretextual.  To succeed
in this endeavor, Plaintiff "'must point to some evidence,
direct or circumstantial, from which a fact finder could
reasonably either (1) disbelieve the employer's articulated
legitimate reasons; or (2) believe that an invidious
discriminatory reason was more likely than not a motivating or
determinative cause of the employer's action.'"  Iadimarco v.
Runyon, 190 F.3d 151, 165-66 (3d Cir. 1999) (emphasis in
original) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.
1994)).  In other words, Plaintiff must provide evidence to
"allow a factfinder reasonably to infer that each of the
employer's proffered nondiscriminatory reasons . . . was either
a post hoc fabrication or otherwise did not actually motivate
the employment action."  Id. at 166 (omission in original)
(citation and internal quotation marks omitted).

Yet, Plaintiff cannot "simply show that [Defendant's]
decision was wrong or mistaken, since the factual dispute at

13

issue is whether discriminatory animus motivated [Defendant], not whether [Defendant] is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765.  Plaintiff must thus demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that [Defendant] did not act for the asserted non-discriminatory reasons."  Id. (emphasis in original) (alternation, citations and internal quotation marks omitted).  The burden of persuading the trier of fact that the alleged acts constituted unlawful discrimination remains with Plaintiff.  See Hicks, 509 U.S. at 507 (discussing burdens under McDonnell Douglas analysis).  In this case, Plaintiff presents evidence on disbelief of Defendant's legitimate reasons and on invidious discrimination.  The Court finds that Plaintiff provided sufficient evidence for a reasonable jury to disbelieve Defendant's legitimate nondiscriminatory reasons and need not address Plaintiff's evidence of invidious discrimination.  See Iadimarco, 190 F.3d at 165-66.

1.   Disbelief of Defendant's Legitimate
Nondiscriminatory Reasons

In order to defeat Defendant's Motion, Plaintiff must produce some evidence that disputes each of Defendant's legitimate nondiscriminatory reasons for her termination.  See Fuentes, 32 F.3d at 764.  Moreover, Plaintiff's evidence must "contradict[] the core facts put forward by [Defendant] as the legitimate reason for its decision."  Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (emphasis in original) (citation and internal quotation marks omitted).  In sum, in this case Plaintiff must point to evidence to contradict her alleged poor work attitude and her lack of tenure vis-à-vis others in Plaintiff's department.  In her attempt to defeat Defendant's Motion under this standard, Plaintiff identified two primary reasons to disbelieve Defendant's legitimate nondiscriminatory reasons: (1) Plaintiff's evidence that she had no history of disruption or contentiousness; and (2) that she had more tenure than the only other retained and younger Assistant Buyer in the lumber department.

a.   Plaintiff's past performance and history of
disruptive behavior

The most persuasive evidence Plaintiff provides is that there is no documented evidence of her alleged contentiousness.  Raffetto and Lefever, Plaintiff's most direct

managers, testified that Plaintiff was contentious, would have loud outbursts, and was generally an uncooperative and volatile worker.  See, e.g., Raffetto Dep. 16:15-22; Lefever Dep. 37:19-21.  Plaintiff, on the other hand, testified that she never had an incident or was spoken to by her supervisors about her behavior.  See Eno Dep. 43:11-15 ("Q. Do you recall ever being counseled or spoken to by Mr. Raffetto about the way that you responded to other employees?  A. Never.").  While she admits to having a heated discussion with Raffetto sometime in January 2008, Raffetto testified that this discussion had no impact upon his determination to recommend Plaintiff for termination.  See Raffetto Dep. 41:18-43:8.

Contradicting all of Defendant's cited testimony, however, is the lack of any criticism of Plaintiff's demeanor and work attitude in her reviews from 2004 through 2007.  Indeed, Raffetto admitted that Plaintiff's reviews contained no negative criticism and in fact, contained positive statements about Plaintiff's demeanor.  See, e.g., id. at 167:2-5 ("Cathy hit the ground running in eastern and is doing an excellent job for that department.  The staff in eastern is enjoying her presence."); id. at 181:23-182:4 ("Cathy has been quite gracious about the change and has done a great job of being the lone assistant in eastern.  Jim Lefever is confident that services to the dealers, suppliers and staff has not suffered."); id. at

182:7-9 ("Cathy relates well to the eastern traders, is always willing to help and maintains an upbeat attitude."). Raffetto testified that, although he did not document Plaintiff's contentiousness, he failed to do so to keep the peace and retain Plaintiff because of how busy Defendant was at the time. See, e.g., id. at 160:6-161:13. Moreover, Raffetto also testified that he had numerous off-the-record discussions with Plaintiff about her contentiousness. See id. at 167:9-168:3. This is directly contrary to Plaintiff's testimony. Accordingly, given this disparity in evidence, Plaintiff identified sufficient evidence to contradict Defendant's proffered legitimate reason for terminating her — that it terminated her because of her poor work attitude.

### b.   Defendant retained a younger and less experienced Assistant Buyer

There is also an incoherency in Defendant's proffered reason that Plaintiff had less tenure than others in her department. As discussed above, the most pertinent comparator for Plaintiff's position was Debbie Wilkinson, also an Assistant Buyer. Wilkinson was forty-one years old during the first RIF. See Def.'s Opening Br. Ex. B. Defendant argues that Wilkinson, who allegedly did not have the contentiousness problems of Plaintiff, had eighteen years of experience compared Plaintiff's

17

ten years of experience.  But, Plaintiff points to evidence that Wilkinson had only been an Assistant Buyer since 1999, whereas Plaintiff had been an Assistant Buyer since 1997.  See Pl.'s SF ¶ 48; Pl.'s Opening Br. Ex. 17.  Before 1999, Wilkinson held the role of Buyer's Assistant.  Id.

The record is unclear whether Buyer's Assistant and Assistant Buyer are the same positions or not.  Raffetto seemed to believe that the roles were the same.  See Raffetto Dep. 211:6-10 ("Q. Was there a difference, though, in actual job responsibilities as far as you know?  A. If there was, I don't know what it was.").  But Plaintiff put forward evidence that Defendant announced Wilkinson's promotion from Buyer's Assistant to Assistant Buyer in 1999.  See Pl.'s Opening Br. Ex. 63. Thus, Plaintiff argues, there must be a difference in job responsibilities between Buyer's Assistant and Assistant Buyer. While it is undisputed that Wilkinson had more tenure within the company, the record is unclear as to whether Wilkinson had more tenure, and may indeed have had less tenure as an Assistant Buyer, than Plaintiff.

To be sure, Raffetto's testimony indicates that he did not consider tenure in a particular position, but that he considered tenure in the holistic sense of years of service, in any capacity, with Defendant.  Raffetto Dep. 47:19-48:3; 48:24-49:8.  Toombs's testimony, however, illustrates an important

18

inconsistency that undermines Raffetto's criteria of utilizing overall tenure in his RIF determination.  Raffetto testified that Toombs did not provide him any criteria upon which to determine the employees to terminate.  See id. at 50:16-18 ("Q. Were you given any guidance as to what criteria you should use? A. No.").  But, Toombs testified that he told Raffetto to consider performance, the kind of team Raffetto needed going forward, and briefly discussed tenure.  Toombs Dep. 50:12-51:2.

The inconsistency in the criteria that Toombs told Raffetto to use when assessing which employee to terminate in the RIF supports an inference that Plaintiff's lack of tenure within the company as a whole was pretext for age discrimination.  Contrary to Toombs's alleged guidance, Raffetto testified that he did not take performance into account when deciding to submit Plaintiff's name for termination.  Raffetto Dep. 47:16-21, 50:10-15.  This inconsistency supports the inference that Defendant terminated Plaintiff because of her age.

Relatedly, there is one undisputable inconsistency between Defendant's EEOC Position Statement, filed in response to Plaintiff's charge of discrimination, and the other evidence of record.  Defendant's EEOC Position Statement provides:

> In her complaint, the only basis for her age claim is the allegation that her "duties were taken over" by [] Debbie Wilkinson and Joseph Dipietro.  However, she is

> mistaken in her assumption.  Because of the almost 50%
> drop in business, there was no additional work for
> anyone to take over.  Therefore, no one assumed her
> duties.

EEOC Position Statement 2-3, Pl.'s Opening Br. Ex. 3.  The

record is clear, and Defendant does not now argue to the

contrary, that various other employees took over Plaintiff's

duties after her termination.  Indeed, Toombs testified that

after the RIF the workload for the remaining employees

increased.  See Toombs Dep. 194:18-23 (stating that in a down

market "you have to work harder to generate business, and you

don't have the resource to do it.  So like any company,

especially in this day and age when you have reduction in work

force, everybody has to do more work").

It is true that this inconsistency, alone, does

nothing to undermine Defendant's proffered reason for

Plaintiff's termination – lack of tenure.  The fact that there

was evidence that Plaintiff's workload was taken over by someone

else, even if that person was younger, is probative of

Plaintiff's prima facie case, but does not alone satisfy

Plaintiff's burden under Fuentes.  But, when taken in the

totality of the circumstances, this inconsistency between what

Defendant submitted to the EEOC supports denying Defendant's

Motion.  See Doe v. C.A.R.S. Prot. Plus, Inc., 527 F.3d 358, 370

(3d Cir. 2008) (providing that "evidence supporting the prima

facie case is often helpful in the pretext stage").

Accordingly, this glaring inconsistency, combined with the

incoherency of Wilkinson's tenure vis-à-vis Plaintiff's tenure,

and the inconsistency of what criteria were to be utilized when

assessing employees for the RIF, shows "weaknesses,

implausibilities, inconsistencies, incoherencies, or

contradictions in [Defendant's] proffered legitimate reasons for

its action that a reasonable factfinder <u>could</u> rationally find

them unworthy of credence, and hence infer that [Defendant] did

not act for the asserted non-discriminatory reasons." <u>Fuentes</u>,

32 F.3d at 765 (emphasis in original) (alternation, citations

and internal quotation marks omitted).

Given this evidence of record, viewing the facts in

the light most favorable to Plaintiff, and drawing all

reasonable inferences in her favor, Plaintiff pointed to

sufficient evidence to allow a fact-finder reasonably to infer

that each of Defendant's proffered nondiscriminatory reasons was

pretextual.[7]

-------------------------------------------------

[7]     The Court is mindful of the recent opinion of Judge
Dalzell in <u>McGrath v. Lumbermens Merch. Corp.</u>, No. 10-7513, ---
F. Supp. 2d ----, 2012 WL 935688 (E.D. Pa. Mar. 20, 2012).  In
that case, Judge Dalzell granted Defendant's Motion for Summary
Judgment.  <u>McGrath</u> involved many of the same issues that appear
in this case.  That is, Defendant terminated McGrath, age fifty-
nine, during the first wave of the RIF along with Plaintiff in
this case.  Yet, there are distinguishing features in <u>McGrath</u>
that necessitate an opposite result here.  Most importantly, in
that case it was uncontroverted that McGrath had the least

## V.    CONCLUSION

For the reasons stated above, the Court will deny Defendant's Motion.  An appropriate order will follow.

---

tenure in his department, and also that he admitted to being informed that "he lacked patience, could be excessively judgmental, and was at times intimidating to fellow traders." Id. at *5.  Those uncontroverted facts regarding belief of Defendant's nondiscriminatory reasons for terminating McGrath – that he had less tenure than others in his department and that he did not work well within his group – are exactly what are missing in this case.  Here, as explained above, the facts are unclear whether Defendant ever disciplined Plaintiff or informed her of any personality problems.  Nor is it clear that Plaintiff had less tenure at her position than Wilkinson.  Accordingly, and although the Court understands the result here is different from the result in Judge Dalzell's well-reasoned opinion, on the record currently before this Court in Plaintiff's case, such a different result is warranted.